[Civ. No. 24384. Fourth Dist., Div. One. Oct. 19, 1981.]

In re RODERICK S., a Person Coming Under the Juvenile Court Law THE PEOPLE, Plaintiff and Respondent, v.
RODERICK S., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Susan L. Rapp for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—A juvenile court petition charged minor Roderick S. with carrying a concealed dagger and of carrying a switch-blade knife with a blade over two inches long. (Pen. Code, § 653k.) Roderick's motion to suppress was denied and the juvenile court then made a true finding as to possession of the switch-blade but made a not true finding as to the possession of a concealed deadly weapon. Roderick appeals the order adjudging him to be a ward of the court.

### FACTS

About 11:10 p.m. on September 5, 1980, San Diego Police Officers Baldeniegro and Copeland were at a shopping complex in East San Diego. They were there at the request of the owner who sought to reduce loitering and congregating of juvenile gang members and to prevent harassment of customers by youths. The police officers saw Roderick walking alone. Baldeniegro had previously known Roderick. He appeared to be under age and to be out after curfew. They ap-

proached and asked Roderick his age. He admitted he was 15 years old. He was wearing a red bandana in his left rear pocket and a black bandana in his right rear pocket, a form of dress indicating a membership in the Eastside "Piru" gang. Roderick was not in the territory or "home turf" of his own gang. A pat-down of Roderick disclosed a knife in his left rear pocket under the red scarf. Baldeniegro patted him down because of his extensive experience with members of gangs in this area who were often armed. The knife was not in perfect working order but could be flipped open if opened manually to some unspecified degree. Roderick told Baldeniegro he was carrying the knife for protection.[1] The length of the knife according to the testimony was nine inches in total, with a four-inch blade. Pending this appeal, the knife was destroyed by the San Diego Police Department.

Roderick appeals, contending (1) the prosecution failed to establish a violation of Penal Code section 653k in that the prosecution's evidence did not establish the blade was a switch-blade knife, (2) the detention of Roderick for violation of a curfew ordinance was illegal and therefore the evidence seized as a result of the detention must be suppressed, and (3) the unlawful destruction of the knife denies him an adequate record on appeal and prevents this court from complying with its duty to review all evidence.

DISCUSSION

I

Roderick contends the evidence was insufficient because (1) the length of the knifeblade was not established and (2) there was no showing by the People that the knife was in fact a switchblade as defined by the Penal Code. The record must be viewed by this appeal court in the light most favorable to the judgment and that record demonstrates Roderick raised no question as to the length of the blade in the juvenile court proceedings. The officers stated the blade was four inches in length and explained the mechanism for opening the knife. The knife appeared to have a spring mechanism which would hold the blade ex-

---

[1]Although not raised by appellant, we note a *Pope* issue of incompetence of counsel below. Defense counsel, despite abundant opportunity, failed to object to the absence of a foundation of a proper *Miranda* warning and waiver prior to the introduction of defendant's admission he carried the knife "for protection, man" (*People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]).

tended once opened. The spring, however, was broken or defective or not present on the knife in question. The blade would not open automatically upon a push or flick of the button. Nor could the blade be flipped open using gravity from a closed position. Only if the blade were opened part way manually would a flipping motion then cause the knife to open. The foregoing description of the knife was made on the record without objection or comment by defense counsel.

Penal Code section 653k defines a switch-blade knife most precisely: "For the purposes of this section a 'switch-blade knife' is a knife having the appearance of a pocketknife, and shall include a spring-blade knife, snap-blade knife, gravity knife or any other similar type knife; the blade or blades of which are two or more inches long *and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever.*" (Italics added.)

The statute first alternatively requires the blade on such prohibited knife must open "automatically." Webster's Third New International Dictionary (1966) page 148 defines "automatic" as "having the power of motion and action entirely within self ... having a self-acting or self-regulating mechanism ...."

If we accept the officer's description of this knife at face value, giving it every favorable intendment, yet the knife described does not meet the statutory requirement of a blade that opens "automatically" on the flip of a button or pressure on the blade, flip of the wrist or other mechanism. There is no evidence that the blade is released simply "by the weight of the blade"—or any other type of mechanical device. It does not open in response to a "flick" of the button. It in fact does *not* open by gravity or on a "flick" of the wrist. To open this knife one must first manually partially open the knife. Only then will the flipping action result in fully opening the knife. We are required to construe criminal statutes strictly. (*People* v. *Bain* (1971) 5 Cal.3d 839, 850 [97 Cal. Rptr. 684, 489 P.2d 564].) The oral testimony of the officer does not measure up to the requirement of substantial evidence to meet the statutory description strictly construed. The judge however saw and examined the knife itself before making his finding. We therefore examine Roderick's next contention of error.

## II

Roderick contends the destruction of the knife pending this appeal has denied him of an adequate record and prevents this court from complying with its duty to review all the evidence. We agree.

The knife was held for 90 days as evidence by the police, then destroyed on January 21, 1981. The disposition of evidence in juvenile court cases is governed by Welfare and Institutions Code section 826, subdivision (a), which in turn refers to Penal Code sections 1418, 1418.5 and 1419. Furthermore, the disposition of the knife was also alternatively governed by Penal Code section 12028, subdivision (d), which authorizes destruction of weapons, such as the knife in question, annually during the month of July. Such procedure was not followed here.[2]

Section 1419 provides that "any such property filed as an exhibit shall be, by order of the trial court, destroyed or sold or otherwise disposed of under the conditions provided in such order." Here the record contains no court order directing the destruction of the knife. It is Roderick's contention that as a requirement of due process, he is entitled to an accurate record on appeal (*People* v. *Gloria* (1975) 47 Cal. App.3d 1, 7 [120 Cal.Rptr. 534]) and to a review of all legally admissible evidence (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576, 577 [162 Cal.Rptr. 431, 606 P.2d 738]). The effect of this unauthorized destruction of the knife is to preclude this court from making an examination on its own of the critical bit of evidence in this case. While there is substantial oral evidence that the blade was over two inches in length, nevertheless, the testimony as to the manner in which the blade may be opened does not conform to the statutory language describing the specified ways in which a proscribed switch-blade knife will open. Absent a testimonial description which would constitute evidence, substantial in nature before the juvenile court, and now absent the device itself, this court is unable to ascertain whether the judge's view of the knife was in fact substantial evidence supporting the trial court's finding. The unauthorized destruction of the knife denies Roderick the opportunity for a fair appellate review of the evidence and is a denial of due process.

---

[2]We do not intend to intimate that had the police destroyed the evidence as sanctioned by section 12028, this destruction would necessarily be consistent with Penal Code section 1419 and comport with defendant's more fundamental due process right to accurate record on appeal. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576, 577 [162 Cal.Rptr. 431, 606 P.2d 738].)

## III

Since we do not find substantial evidence to support the finding that the knife was in fact a switch-blade, we do not examine further Roderick's contention that the San Diego curfew ordinance did not authorize the stopping and pat down that took place here.

Judgment reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.